**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CHARLES HICKS #246241,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO. 2:07-cv-257-MHT** |
| | ) | |
| **ALABAMA DEPT. OF CORRECTIONS,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SPECIAL REPORT AND ANSWER

COME NOW Defendants Alabama Department of Corrections, Commissioner Richard Allen, Warden John Cummins, Captain Horace Burton, and Classification Specialist Debra Martin, by and through the undersigned counsel in the above-styled action, and file their Special Report and Answer pursuant to the March 26, 2007 of this Honorable Court. Defendants state as follow:

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that prison officials have taken monies from his Prisoner Money on Deposit (PMOD) account.

## DEFENDANTS

1.   Richard Allen, Commissioner
     Alabama Department of Corrections
     P.O. Box 301501
     Montgomery, AL 36130

2.   John Cummins, Warden III
     Bullock Correctional Facility
     P.O. Box 5107
     Union Springs, AL 36089-5107

1

3.    Horace Burton, Captain
      Frank Lee Youth Center
      P.O. Box 220410
      Deatsville, AL 36022

4.    Debra Martin, Classification Specialist
      Frank Lee Youth Center
      P.O. Box 220410
      Deatsville, AL 36022

## DEFENSES

Defendants assert the following defenses to Plaintiff's claims:

1. Defendants deny each and every material allegation contained in Plaintiff's
   Complaint and demand strict proof thereof.

2. Defendants plead not guilty to the charges in Plaintiff's Complaint.

3. Plaintiff's complaint fails to state a claim upon which relief can be granted.

4. Plaintiff is not entitled to any of the relief requested.

5. Defendants plead the defense of qualified immunity and aver that any purported
   action taken by any of them was reasonable and in good faith with reference to
   clearly established law at the time of the incidents complained of by Plaintiff.

6. Defendants are entitled to qualified immunity and aver it is clear from the face of
   the complaint that Plaintiff has not alleged specific facts indicating that any
   Defendant violated any clearly established constitutional right.

7. Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

8. The allegations contained in Plaintiff's Complaint against Defendants, fails to
   comply with the heightened specificity requirement of Rule 8 in § 1983 cases
   against persons sued in their individual capacities. *See Oladeinde v. City of*

2

*Birmingham,* 963 F. 2d 1481, 1485 (11th Cir. 1992); *Arnold v. Board of Educ. of Escambia County, Ala.,* 880 F. 2d 305, 309 (11th Cir. 1989).

9. Defendants plead all applicable immunities, including but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

10. Defendants were at all times acting under the color of state law and therefore, they are each entitled to substantive immunity.

11. Defendants plead the general defense.

12. This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against these Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights.

13. All claims of Plaintiff against these Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

14. Defendants plead the affirmative defense that Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to Plaintiff.

15. Defendants plead the affirmative defense that Plaintiff has failed to mitigate his own damages.

16. Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. §1997e (a) and as such these claims should be dismissed.

17. Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

18. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e) (c).

19. Defendants reserve the right to raise additional defenses.

## DISCLOSURES

In accordance with the February 16, 2007 Special Report Order, Defendants submit the following initial disclosures:

A. Attached affidavits of:

1.     John Cummins, Warden III

2.     Horace Burton, Captain

3.     Richard Allen, Commissioner

4.     Debra Martin, Classification Specialist

B. The following persons may have personal knowledge of the facts relevant to the claims asserted by Plaintiff or the defenses asserted by Defendants:

Horace Burton, Captain

Debra Martin, Classification Specialist

Charles Hicks, Plaintiff

C. Clear and legible copies of the documents relevant to claims or defenses asserted in the action are as follows:

5.    Inmate Summary Data

6.    Administrative Regulation 448, Inmate Mail

## STATEMENT OF THE FACTS

Plaintiff is an inmate within the Alabama Department of Corrections. He was confined at Frank Lee Youth Center in Deatsville, Alabama. Plaintiff is serving a 10-year term for three (3) convictions of Theft of Property I. (Ex. 5)

Plaintiff alleges that he is being denied being classified to work release because of the litigation that he has filed. Plaintiff further alleges that his legal mail is not leaving the institution in a timely manner. These allegations are false.

On April 17, 2006, Judge Gloria T. Bahakel ordered Plaintiff to complete a vocational training program during his current incarceration. (Ex. 4) In November 2006, Defendant Martin reviewed Plaintiff's file for his semi-annual review. (Ex. 4) Plaintiff was not eligible for any changes in his classification "because he has not completed the mandated court ordered vocational training..." (Ex. 4) Plaintiff will not be considered for a placement into work release until he has complied with the sentencing court's order. (Ex. 4) "Defendant Martin has no control over criteria utilized to determine work release eligibility. These criteria are set forth in the Department of Corrections Classification Manual." (Ex. 4)

As to the issue of Plaintiff's legal mail, it is opened and inspected in the inmate's presence, as required by ADOC Administrative Regulation 448. (Ex. 2) Outgoing mail

of any kind is not opened without "cause." (Ex. 2)  Plaintiff's outgoing mail has not been opened and inspected. (Ex. 2)

It should be noted that Defendant Cummins has not been the Warden of Frank Lee Youth Center since January 1, 2007. (Ex. 1)  At the time of these incidents, Defendant Cummins was assigned to Bullock Correctional Facility in Union Springs, Alabama. (Ex. 1)  Defendant Allen does not control the day-to-day operations of an institution. (Ex. 3)  Defendant Allen is not aware of Plaintiff's allegations.

## ARGUMENT

### I.    Immunities

As is evident from Plaintiff's complaint, his claims are directed principally toward actions allegedly perpetrated by officials of the Alabama Department of Corrections (ADOC).  There are no claims directed specifically toward Defendant Commissioner Allen.

"'It is well established in [the Eleventh] Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.'"  Cottone v. Jenne,  326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).  Thus, the Commissioner cannot be subjected to suit merely because other state officials or agents who may ultimately answer to them have allegedly violated the law.

There is a requirement for "heightened pleading" that attends section 1983 claims, especially those for which qualified immunity is raised as a defense.  See Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).  As the Eleventh Circuit has held, "[i]n civil rights and conspiracy actions, . . . more than mere conclusory notice pleading is required"

and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). The courts "'generally accord . . . official conduct a presumption of legitimacy.'" Gonzalez, 325 F.3d at 1235 (quoting United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991)).

Defendants are officials or agencies of the State of Alabama, Plaintiff's official-capacity claims must be considered to be against the State itself. This, in turn, affords the Defendants Eleventh Amendment immunity; the State need not actually be named as a party for such immunity to be available. See Williams v. Bennett, 689 F.2d 1370, 1376 (11th Cir. 1982), cert. denied 464 U.S. 932 (1983). Thus, Plaintiff's federal claims for damages against the Defendants in their official capacities are barred by Eleventh Amendment immunity and should be dismissed.

Plaintiff's state-law claims against the Defendants in their official capacities are similarly barred by the State's sovereign immunity, as is bestowed by Article I, Section 14 of the Alabama Constitution of 1901. In Haley v. Barbour County, the Alabama Supreme Court held that "Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State." 885 So. 2d 783, 788 (Ala. 2004) (citing Lyons v. River Road Constr., Inc., 858 So. 2d 257, 261 (Ala. 2003), and Mitchell v. Davis, 598 So. 2d 801, 806 (Ala. 1992)). Thus, the Plaintiff's claims under state law for damages against the Defendants in their official capacities are barred by sovereign immunity and should be dismissed.

The Defendants are entitled to qualified immunity regarding the individual-capacity federal claims stated in Plaintiff's complaint. The basic test for qualified immunity was stated in Harlow v. Fitzgerald, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818. Qualified immunity bars claims "so long as [the defendant's] actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Further, qualified immunity is not just a bar to damages; it is a bar to suit. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Even allegations of animus by a state actor against a plaintiff are not sufficient to overcome the presumption of qualified immunity. See Hansen v. Soldenwagner, 19 F.3d 573, 578 (11th Cir. 1994) (stating that "[f]or qualified immunity purposes, the subjective motivation of the defendant-official is immaterial"). Also, in Gardner v. Howard, 109 F.3d 427, 429-430 (8th Cir. 1997), the Eighth Circuit held "[q]ualified immunity shields government officials from §1983 damage liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." (Citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

The justification for qualified immunity is that such immunity is necessary in order for the government to effectively function. If not for the protections immunity provides, state officials could be subject to suit for every move they make. This action would have a serious chilling effect on the ability of such officials to do their jobs. In

sum, state officials should be allowed to exercise discretion in the performance of their duties without fear of a lawsuit around every corner. Mitchell, 472 U.S. at 525-26; see also Hunter v. Bryant, 502 U.S. 224, 229 (1991); Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 794 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1983).

In the present case, the Defendants deny that they violated "a clearly established right" of the Plaintiff. As such, it is incumbent upon Plaintiff to show that the Defendants violated "clearly established constitutional law" in their dealings with Plaintiff. See Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) (holding that it is a plaintiff's burden to rebut a defendant's qualified immunity defense). This, however, has not been demonstrated by Plaintiff. He has alleged no constitutional injury perpetrated by any of the Defendants. Likewise, Plaintiff cannot contend that the Governor or the Commissioner vicariously harmed him because of the alleged actions of other state officials or agents. See Cottone, 326 F.3d at 1360. Because Plaintiff cannot demonstrate that any of his clearly established constitutional rights have been infringed, qualified immunity bars his attempt to impose liability on the Defendants. Therefore, Plaintiff's federal claims against the Defendants in their individual capacities should be dismissed.

Plaintiff asserts his allegations against the Defendants in both their individual and official capacities. As was stated previously, Defendants are entitled to sovereign immunity to the extent Plaintiff has sued them in their official capacities for damages under state law. However, just as the Defendants in their individual capacities are entitled to qualified immunity under federal law, they are protected by State-agent immunity under state law.

In Ex parte Butts, 775 So. 2d 173 (Ala. 2000), the Alabama Supreme Court adopted a test that was first set out in its plurality opinion in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), for evaluating whether a state official sued in his individual capacity is entitled to immunity as an agent of the State. Though distinct from a qualified immunity analysis under federal law, State-agent immunity similarly shields state officials from liability while they are discharging their duties in good faith. In this case, the Defendants' alleged actions clearly fall within the protection of State-agent immunity under Alabama law. See Butts, 775 So. 2d at 177-78 ("A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners").

The Defendants can only be divested of State-agent immunity upon a showing that they acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law. Butts, 775 So. 2d at 177-78; Ryan v. Hayes, 831 So. 2d 21, 28 (Ala. 2002). Moreover, it is the Plaintiff's burden to make such a showing. Ryan, 831 So. 2d at 27-28; see also Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003) (holding that, once it is shown that a state agent was undertaking a discretionary function, the burden shifts to the plaintiff to disprove the defendant's entitlement to immunity).

Plaintiff simply cannot carry the burden of proof in this case. As argued herein, the Plaintiff has not bothered to state with any particularity what all of the Defendants did to become defendants in this lawsuit. Consequently, it is inconceivable that Plaintiff could marshal the evidence needed to defeat State-agent immunity.

II.     Duties

These courts have continuously recognized that the operations of correctional institutions are, at best, a difficult assignment and that correctional officials must be given broad range in discretion and latitude in which to carry out their duties. See Hewlitt v. Helms, 459 U.S. 460 (1983).  "Prison administrators...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979); Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994).

The Alabama Department of Corrections established an administrative regulation to address incoming and outgoing inmate mail.  The current regulation is AR 448, which was enacted on December 19, 2005 and supercedes Administrative Regulation 303.  (Ex. 6)  This regulation defines "legal mail" as "[l]etters to and from attorneys, courts, judges, clerks, and other officials of the courts and governmental agencies."  The regulation states that "[a]ll 'Legal Mail' will be opened and inspected in the presence of the inmate."  This regulation further states that the inspection of "[i]ncoming mail, including 'Legal Mail', shall be inspected for contraband and/or for abuse of the mail privilege.  Outgoing mail may be inspected for contraband." (Ex. 6)

In *Gardner v. Howard*, 109 F.3d 427, 429-430 (8th Cir. 1997), the Eighth Circuit held "[q]ualified immunity shields government officials from §1983 damage liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." (Citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  The United States Supreme Court considered the issue of incoming legal

mail in *Wolff v. McDonnell*, 415 U.S. 539, 576-577 (1974). The *Wolff* decision held "[w]e need not decide, however, which, if any, of the asserted rights are operative here, for the question is whether, assuming some constitutional right is implicated, it is infringed by the procedure now found acceptable by the State....we think that [the prison officials], by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires." "The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband." *Gardner* at 431; citing *Harrod v. Halford*, 773 F.2d 234 (8th Cir. 1985); *Morgan v. Montanye*, 516 F.2d 1367 (2nd Cir. 1975).

It has been the position of the Alabama Court of Criminal Appeals that an inmate "does not have a liberty interest in a particular custody or security classification." Block v. Alabama Department of Corrections, 923 So.2d 342 (Ala. Crim. App. 2005); Handley v. State, 549 So.2d 630, 631 (Ala. Crim. App. 1989). (Others citations omitted.) The Alabama Court of Criminal Appeals has also held "'[t]he classification scheme adopted by the Alabama prison system to determine the custody status of prisoners "is not arbitrary and capricious, but reasonable and appropriate."'" Block at 343; citing Hill v. State, 594 So.2d 246, 248 (Ala. Crim. App. 1992) (Other citations omitted). "[C]ustody classifications in prison do not amount to matters in which the inmate has a constitutional right." Block at 343; Hadley, 549 So.2d at 631.

Although, the Alabama Supreme Court held in Ex parte Berry, 794 So.2d 307 (Ala. 2000) that an inmate had a protected liberty interest in work release once classified

in said program that has since changed. The Alabama Court of Criminal Appeals held in

Ward v. State, 929 So.2d 1048, 1050 (Ala. Crim. App. 2005) the following:

> However, subsequent to the Supreme Court's decision in *Ex parte Berry*,
> the DOC changed the language in its *Classification Manual*. On July 9,
> 2003, the *Classification Manual* was amended to delete the requirement
> that a due-process hearing be held before an inmate is removed from
> work-release status. The pertinent language now reads: "[A]
> reclassification process is not required in order to remove an inmate from
> work release." This language does not prevent the arbitrary removal of
> an inmate from the work release program; therefore, this language does
> not create a liberty interest in remaining in the work-release program,
> like the language in the *Classification Manual* as the time in *Ex parte
> Berry* was decided did.

Due to this change in the *Classification Manual* and the Ward ruling, the Petitioner does

not have a liberty interest in the work release program and is "not entitled to the due-

process protections of Wolff v. McDonnell, 415 U.S. 539 (1974)." (Ward at 1050.). As

the Ward Court held, the Petitioner's "claim that he was entitled to due process before

being removed from the work-release program, or whatever grounds he asserts, is without

merit." (Id.) Therefore, Petitioner does not a have protected right or liberty interest in a

lesser restrictive custody level or work release program.

Wherefore these premises considered, the Defendants pray that this Honorable

Court will find that the Plaintiff is not entitled to any relief and this complaint should be

dismissed.

Respectfully submitted,


/s/TARA S. KNEE_____
TARA S. KNEE
ASSISTANT ATTORNEY GENERAL
ASSISSTANT GENERAL COUNSEL

**ADDRESS OF COUNSEL:**
Alabama Department of Corrections
Legal Division
Post Office Box 301501
Montgomery, Alabama 36130-1501
(334) 353-3885

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

Inmate Charles Hicks
AIS #246241
Staton Correctional Facility
P.O. Box 56
Elmore, AL 36025

/s/Tara S. Knee
Tara S. Knee
Assistant Attorney General
Assistant General Counsel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

CHARLES HICKS, #246241              )
                                   )
    Plaintiff,                  )
                                   )
    v.                          )    CIVIL ACTION NO. 2:07-CV-257-T
                                   )
ALABAMA DEPT OF CORRECTIONS, et al. )
                                   )
    Defendants                  )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared John Cummins II, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is John Cummins II, and I am presently employed as a Correctional Warden III, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama  36089. I am over twenty-one (21) years of age.

On January 1, 2007, I was promoted to Warden III at Bullock County Correctional Facility, and therefore, have no knowledge of this incident, which occurred on March 13, 2007.

_____
John Cummins II



Page 2


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal

on this the _____9th_____ day of April 2007.


_____
                NOTARY PUBLIC

My Commission Expires: 2/24/2009.



SEAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

CHARLES HICKS, # 246241     )
                          )
     PLAINTIFF,          )
                          )
       vs.           )     CIVIL ACTION NO.CV-2007-257
                    )
STATE OF ALABAMA DEPT. OF
CORRECTIONS, et al.,      )
                          )
     DEFENDANTS.      )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Horace Burton, Jr., who being known by me and first duly sworn, deposes and says on oath as follows:

My name is Horace Burton, Jr. and I am presently employed as a Correctional Captain with the Alabama Department of Corrections, at Frank Lee Youth Center, Deatsville, Alabama. I am over twenty-one (21) years of age. By my signature below, I certify that the statements therein are true to the best of my knowledge.

In no way have I violated inmate Charles Hicks' civil rights. Nor have I found any evidence that his civil rights have been violated by Ms. Debra Martin or any other member of Frank Lee Youth Center's staff. If inmate Hicks was not recommended for Work Release, it's because he did not meet the criteria dictated by the courts or by the ADOC Classification Division. Ms. Martin has not singled him out in an attempt to prevent him from going to Work



Release.  While we do inspect incoming Legal Mail, it's opened and inspected in the presence of

the inmate as required by ADOC Administrative Regulation 448 (See attached page 4 of 10 of

AR 448).  Normally outgoing mail of any kind is not opened without "cause".  There has been no

"cause" to open and inspect any of Charles Hicks' outgoing mail.  To my knowledge no out

going mail has been opened and inspected since I have been at Frank Lee Youth Center, although

AR 448 gives us the authority to do so.  (See attached page 5 of 10 of AR 448).


This, I do hereby certify and affirm to on the 9th day of April, 2007.

Horace Burton, Jr.
Frank Lee Youth Center


STATE OF ALABAMA)
ELMORE COUNTY    )

Sworn to and subscribed before me and given under my hand and official seal this the  9th
day of April                      2007.

Notary Public

4/4/10
My Commission Expires

F.    Inspection

1.    Incoming mail, including "Legal Mail", shall be inspected for contraband and/or for abuse of the mail privilege. Outgoing mail may be inspected for contraband.

2.    All contraband will be disposed of in accordance with AR 306, *Contraband and Evidence Management*.

3.    Every effort should be made to ensure that all incoming letters and packages are delivered within 72 hours after receipt at the institution, other than weekends and holidays. Inmates will be notified of rejected mail in accordance with procedures contained in V.G.

G.    Rejection

1.    In the event any incoming mail is rejected, the mail clerk will cite the policy violation and complete an ADOC Form 448, *Notification of Rejected Mail,* then forward to the inmate in a timely manner.

2.    An inmate may appeal the rejection to the Warden/designee for review and final determination. (Refer to ADOC Form 448, *Notification of Rejected Mail*).

3.    If the appeal is denied, the inmate will have the option of returning the mail to the sender at his/her own expense within 30 days, or the property will be destroyed at the end of the 30-day period.

4.    Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the Warden, it could reasonably be considered to:

a.    Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

b.    Advocate, facilitate, or otherwise present a risk of lawlessness, violence, anarchy, and rebellion against government authority.

c.    Be an attempt to incite disobedience toward law enforcement officials or correctional staff.

d.    Be an attempt to give instructions for the manufacturing or use of intoxicants, weapons, explosives, drugs, drug paraphernalia, or other unlawful items or substance.

e.    Contain obscene photographs, pictures, or drawings, including publications and advertisements from distributors.

AR 448 – December 19, 2005

"This correspondence if forwarded from Alabama State Prison. The contents have not been evaluated, and the ADOC is not responsible for the substance or content of the enclosed communication."

2.  An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name. (See AR 450, *Legal Name Changes*)

3.  Designated staff should collect outgoing mail once each business day.

D.  Legal Mail

1.  Outgoing

   a.  Inmates will be provided two (2) free stamps per week for **legal mail** only.

   b.  Each Warden shall designate a box for "Legal Mail."

2.  Incoming

   a.  A bound ledger shall be maintained by mailroom staff that lists each piece of legal mail received, the date inspected, delivered, and recipient's signature.

   b.  The inmate will sign for all "Legal Mail" prior to receipt.

   c.  All "Legal Mail" will be opened and inspected in the presence of the inmate.

E.  Limitations

1.  When abuses are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was directed.

2.  When the Warden receives a request to terminate correspondence with an inmate, the Warden shall notify the inmate of the request and inform the inmate that further correspondence with the individual shall cease.

3.  The Warden/designee will provide documentation that will be placed in the mail area and in the inmate's institutional file of persons with whom the inmate may no longer correspond.

AR 448 – December 19, 2005

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES HICKS,                    )
#246241,                          )
                                  )
        Plaintiff,                )
                                  )
vs.                               )        CV-07-257
                                  )
ALABAMA DEPT. OF CORRECTIONS,     )
 ET AL.,                          )
                                  )
        Defendants.               )

## A F F I D A V I T

STATE OF ALABAMA

MONTGOMERY COUNTY

        Before me, the undersigned authority, a Notary Public, in and for said County and State of

Alabama at Large, personally appeared Richard Allen, who being known to me and being by me first

duly sworn, deposes and says on oath as follows:

        My name is Richard Allen.  I am presently employed as Commissioner of the Alabama

Department of Corrections.  I am over twenty-one (21) years of age.

        I do not know the Plaintiff in this matter and to my knowledge have not had any contact with

him.  As Commissioner, I do not control the daily operation of the Frank Lee Youth Center and had

no involvement in the incidents of which Plaintiff complains.

        I deny that I have violated the Plaintiff's constitutional rights in any way.

Richard Allen
Commissioner

DEFENDANT'S
EXHIBIT
3

Charles Hicks, AIS# 246241
CV-07-257

Page 2


SWORN TO AND SUBSCRIBED before me this _30th_ day of April, 2007.

NOTARY PUBLIC
MY COMMISSION EXPIRES _3/31/08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Charles Hicks, #246241        )
                      )
      Plaintiff,         )
                      )
      v.             )     CIVIL ACTION NO. 2:07-CV-257-MHT
                      )
Alabama Dept. of Corrections, et al.,  )
                      )
      Defendants,       )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county, personally appeared Debra Kay Martin, who being known by me and first duly sworn, deposes and says on oath as follows:

My name is Debra Kay Martin and I am presently employed as a Classification Specialist with the Department of Corrections, Frank Lee Youth Center, Deatsville, Alabama. I am over twenty-one (21) years of age and I have personal knowledge of the facts set forth herein.

1.  Defendant Martin has no control over criteria utilized to determine work release eligibility. These criteria are set forth in the Department of Corrections Classification Manual. On 4/17/06 Judge Gloria T. Bahakel ordered Inmate Hicks to complete a vocational training program during his current incarceration. Inmate Hicks is not eligible to be considered for work release placement until he complies with the order of the sentencing court. Inmate Hicks has not complied with the sentencing order of the court during this incarceration

2.  Defendant Martin reviewed Inmate Hicks in November 2006 for his semi annual review as mandated in the Department of Corrections Classification Manual. Inmate Hicks was not eligible to be recommended for any changes in his classification at that time because he has not completed the mandated court ordered vocational training during this incarceration.

3.  Defendant Martin has no control over the mail, legal or otherwise, coming into or going out of Frank Lee Youth Center. I have not tampered with any of Inmate Hicks legal mail.


DEFENDANT'S EXHIBIT
A

Debra Kay Martin

STATE OF ALABAMA)
ELMORE COUNTY   )

SWORN AND SUBSCRIBED BEFORE ME AND GIVEN UNDER BY HAND AND
OFFICIAL SEAL THIS, THE ___4 th___ DAY OF ___April___, 2001.

Notary Public

```
                          DISPLAY INMATE SUMMARY DATA                PRODUCTION
 01/MAY/2007      14:01:53    CDSUM    499    L-TARA        CDSUM01    604
------------------------------------------------------------------------------
AIS: 00246241    INMATE: HICKS, CHARLES              RACE: B  SEX:  M

INST: 070-STATON CORRECTIONAL CENTER    JAIL CR: 0319D DOB: 11/02/1961
SSN: ████████████ PAR CONS DT: 11/2007  CURR CUST: MIN2  CURR CUST DT:06/01/2006
ALIAS: HAMPTON, GLENN EDWAR             ALIAS: HICKS, CHARLES EDWAR
ADM TP: NEW COMIT FROM CRT W/REV OF P  STATUS: NEW COMIT FROM CRT W/REV OF PR
INIT SENT DT:04/13/2006 ADM DT: 04/13/2006 DEAD TIME: 00Y 00M 00D
                                N                                         TY
COUNTY      SENT DT   CASE    L CRIME                        TERM         PE
JEFFERSON   04/13/2006 001085 Y THEFT OF PROPERTY I          10Y00M00D    CS
JEFFERSON   04/13/2006 001086 Y THEFT OF PROPERTY I          10Y00M00D    CC
JEFFERSON   04/13/2006 001087 Y THEFT OF PROPERTY I          10Y00M00D    CC


                 NO MORE RCDS THIS TYPE AVAIL
INMATE HAS 000DISCIPLINARIES RESULTING IN LOSS OF 000Y00M00D OF GOOD TIME.
INMATE HAS 007TRANSFER RECORDS ON FILE.
INMATE HAS 03 DETAINER/WARRANT RECORDS ON FILE.
 TOTAL   TERM   REV GOOD TIME   MIN REL DT   TOT GOOD TIME   SHORT DATE  LONG DATE
010Y 00M 00D   000Y 00M 00D   11/20/2008   002Y 07M 15D   11/20/2008   05/23/2015
```


DEFENDANT'S
EXHIBIT
5





## State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

December 19, 2005

ADMINISTRATIVE REGULATION                    OPR: OPERATIONS
NUMBER                    448

### INMATE MAIL

## I.    GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for inmate mail.

## II.    POLICY

It is the policy of the ADOC to allow inmate mail in accordance with the U.S. Postal Service regulations and the guidelines set forth in this regulation.

## III.    DEFINITIONS

A.    Contraband:  Any item that is not permitted by law or is either prohibited or not specifically authorized by ADOC or institutional policy. Items not issued by the ADOC, not sold on the institutional canteen, or not specifically authorized by the Warden.

B.    Correspondence:  Written communication to or from inmates (e.g., letters, post cards, greeting cards) delivered by a postal service.

C.    Inmate Personal Property:  The items and amounts of clothing, equipment, mail, or supplies, which an inmate is allowed to have in his/her immediate possession.

D.    Mail:  For the purpose of this regulation, the term "mail" includes but is not limited to: items delivered by the U.S. Postal Service, inter-institutional mail, and any private carrier servicing the ADOC.

E.    Mail Clerk:  Staff member(s) assigned to the institutional mailroom.

F.    Printed Materials:  Books, publications, magazines, newspapers, periodicals, circulars, and catalogues delivered by the postal services.

G.    Legal Mail:  Letters to and from attorneys, courts, judges, clerks, and other officials of the courts and governmental agencies.



DEFENDANT'S
EXHIBIT
b

H.   Reasonable Suspicion:  Rational inference that a reasonably prudent person could make from specific objective facts.

I.   Internet Materials:  Downloaded copy from a web site.

J.   Religious Materials:   Books, pamphlets, brochures, and religious study courses.

K.   Nudity:  A pictorial depiction where genitalia or female breasts are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

L.   Sexually Explicit:  A picture/illustration of actual or simulated sexual intercourse, and/or oral sex, masturbation, or materials depicting sex.

## IV.   RESPONSIBILITIES

A.   The Warden shall be responsible for developing their institution/division Standard Operating Procedure (SOP) in accordance with AR 448, *Inmate Mail.*

B.   The Mail Clerk is responsible for the collection, inspection, and distribution of incoming/outgoing mail and for the maintenance of the mailroom records.

C.   The Chaplain or the Warden's designee is responsible for reviewing all mail entering the institution for an inmate that has been marked in care of the chaplain as it refers to religious materials.

## V.   PROCEDURES

A.   General Guidelines

1.   The inmates shall be permitted to send and receive correspondence unless it can be determined that such correspondence may present a threat to the safety and security of the public, staff, inmates, and institution.

2.   There is no limit on the volume of letters the inmate can send or receive, or on the language, content, or source of mail except when there is reasonable belief that limitation is necessary to protect the public safety or maintain institutional order.

3.   The Warden shall designate a secure mail area and drop boxes for outgoing mail accessible to all inmates.

4.   Mail between inmates, whether state, county, city, out-of-state or federal may be allowed with the permission of the Wardens involved. It must be shown that there is a close personal relationship (immediate family) between such inmates.

AR 448 – December 19, 2005

5. Mail and packages addressed to an inmate, who has been transferred or released to another known address, should be mailed to the inmate within 48 hours, excluding weekends and holidays.

   a. If a forwarding address is not available, such mail and packages shall be returned to the sender.

   b. If neither a forwarding or return address is available, the mail shall be returned to the post office.

6. All inmate mail shall remain under the supervision of staff until it is distributed. Inmates are not allowed in the mail area without supervision.

7. At no time shall mail be distributed or handled by an inmate or be accessible to any inmate other than the addressee.

8. A staff person shall deliver incoming mail to the inmate(s) to whom it is addressed.

B. Incoming Mail

   1. All incoming mail must be addressed so as to specify the inmate's name, inmate AIS number, and location within the institution.

   2. An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name. (See AR 450, *Legal Name Changes*)

   3. Promotional checks will not be accepted through the mail for deposit to inmate accounts.

   4. Correspondence, printed material, inmate personal property, or money will not be hand delivered to inmates by visitors. The Warden/designee may allow attorneys to hand deliver "Legal Mail" directly to the inmate, subject to being searched for contraband.

   5. Inmate will not receive mail stamped "Collect on Delivery (COD)."

C. Outgoing Mail

   1. All mail being sent from the institution must have a return address which will include: inmate's full name, inmate AIS number, name of institution, dorm/cell number, street address or P. O. Box number as appropriate, city, state, and zip code. Additionally, the following stamped disclaimer will be included on every piece of outgoing mail sent by inmates.

AR 448 – December 19, 2005

"This correspondence if forwarded from Alabama State Prison. The contents have not been evaluated, and the ADOC is not responsible for the substance or content of the enclosed communication."

2. An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes*)

3. Designated staff should collect outgoing mail once each business day.

D.   Legal Mail

1.   Outgoing

a.   Inmates will be provided two (2) free stamps per week for **legal mail** only.

b.   Each Warden shall designate a box for "Legal Mail."

2.   Incoming

a.   A bound ledger shall be maintained by mailroom staff that lists each piece of legal mail received, the date inspected, delivered, and recipient's signature.

b.   The inmate will sign for all "Legal Mail" prior to receipt.

c.   All "Legal Mail" will be opened and inspected in the presence of the inmate.

E.   Limitations

1.   When abuses are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was directed.

2.   When the Warden receives a request to terminate correspondence with an inmate, the Warden shall notify the inmate of the request and inform the inmate that further correspondence with the individual shall cease.

3.   The Warden/designee will provide documentation that will be placed in the mail area and in the inmate's institutional file of persons with whom the inmate may no longer correspond.

AR 448 – December 19, 2005

F.    Inspection

    1.    Incoming mail, including "Legal Mail", shall be inspected for contraband and/or for abuse of the mail privilege. Outgoing mail may be inspected for contraband.

    2.    All contraband will be disposed of in accordance with AR 306, *Contraband and Evidence Management*.

    3.    Every effort should be made to ensure that all incoming letters and packages are delivered within 72 hours after receipt at the institution, other than weekends and holidays. Inmates will be notified of rejected mail in accordance with procedures contained in V.G.

G.    Rejection

    1.    In the event any incoming mail is rejected, the mail clerk will cite the policy violation and complete an ADOC Form 448, *Notification of Rejected Mail,* then forward to the inmate in a timely manner.

    2.    An inmate may appeal the rejection to the Warden/designee for review and final determination. (Refer to ADOC Form 448, *Notification of Rejected Mail*).

    3.    If the appeal is denied, the inmate will have the option of returning the mail to the sender at his/her own expense within 30 days, or the property will be destroyed at the end of the 30-day period.

    4.    Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the Warden, it could reasonably be considered to:

        a.    Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

        b.    Advocate, facilitate, or otherwise present a risk of lawlessness, violence, anarchy, and rebellion against government authority.

        c.    Be an attempt to incite disobedience toward law enforcement officials or correctional staff.

        d.    Be an attempt to give instructions for the manufacturing or use of intoxicants, weapons, explosives, drugs, drug paraphernalia, or other unlawful items or substance.

        e.    Contain obscene photographs, pictures, or drawings, including publications and advertisements from distributors.

f.      Contain plans to escape, unauthorized entry into the institution, or information or maps, which might aid an escape attempt.

g.      Contain information relating to security threat group activity or use of codes and/or symbols associated with security threat groups.

h.      Contain materials specifically found to be detrimental to inmate rehabilitation because it could encourage deviate criminal sexual behaviors.

i.      Publications that contain, nudity, graphic depictions of homosexuality, sadomasochism, bestiality, incest, or sex with children will be denied.

j.      Publications that primarily cover the activities of any sexual or political rights groups or organizations will normally be admitted.

k.      Before delivery of a publication may be denied, the Warden/designee must review the particular publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. It is not necessary to find that the particular recipient is likely to personally engage in such behavior before delivery can be denied.

5.    Abuse of mail privileges by inmates may result in rejection and possible disciplinary action. Abuses included but are not limited to the following:

a.      The writing of letters containing obscene, profane, or indecent language.

b.      Writings that contain threats, derogatory or personal attack against any person.

c.      Writings that contain an escape plot or any other clear threats to the institution.

d.      Receipt of mail, identified as legal mail, from any individual or agency not meeting the legal mail definition.

e.      Writing which contain language purporting to solicit, claim, or demand money, goods, or services by false statements, threats, intimidation or extortion from another person or firm is prohibited.

f.      Any written material in outgoing or incoming mail not specifically intended for the addressee identified on the exterior of the

AR 448 – December 19, 2005

envelope, i.e. sending mail with contents addressed to another party for forwarding which constitutes mail kiting.

H.    Publications/Books

1.    Inmates may receive no more than two books per month and four magazines or newspapers or a combination thereof. (Refer to AR 338, *Inmate Property*, for the number of items an inmate may have in his/her possession at one time.)

2.    The publications should be received directly from the publisher or a recognized commercial distributor and be pre-paid from a family member or friend or from the inmate's Prisoners Money on Deposit Account (PMOD).

3.    Receipt of publications by inmates in segregation will be determined by provision indicated in AR 433, *Administrative Segregation and Housing for Close or Maximum Custody*, and AR 434, *Disciplinary Segregation*.

4.    Each Warden/designee shall personally inspect each issue of a publication when a reasonable expectation that the particular issue violates the standards of this regulation. If they determine that the issue of the publication violates these standards then they will temporarily exclude the publication.

5.    The Warden/designee shall notify the inmate to whom the publication was addressed of the temporary ban.

6.    If the inmate appeals the temporary ban, it will remain in effect pending a final resolution. Upon notice of the appeal, the Warden will furnish a copy of the documentation on the matter to the Commissioner/designee. This documentation will include copies of pages of the excluded issue that contain material that has been identified as violating the restrictions.

7.    The Commissioner/designee will review the action taken by the institution to exclude that issue and either confirm or deny them. If the temporary ban is confirmed, the inmate, the Warden, and all other institutions will be notified, the issue is permanently banned, and the matter closed. The documentation supporting the ban will be retained by the Legal Division and at the institution.

8.    If the temporary ban is denied, the publication will be given to the inmate and the entire matter dropped and all documentation destroyed.

9.    The permanent ban of an issue of a publication may not be relied upon to support an exclusion of a subsequent issue. For example, if the January issue of XYZ magazine is permanently banned, this ban may not be used

AR 448 – December 19, 2005

to justify an exclusion of the February issue of XYZ magazine. Each separate issue must be evaluated independently in accordance with this regulation.

10.   Inmates will not be allowed to be members of, enter into contractual agreements with, or participate in book clubs.

I.   Packages

1.   All religious materials such as books, pamphlets, brochures, and religious study courses shall be sent to the inmate in care of the Chaplain, and will be distributed by the Chaplain after approval and limits have been obtained from the Warden.

2.   Authorized inmates will be allowed to purchase, from their PMOD accounts, arts and craft items through approved reputable suppliers.

3.   Prior to Christmas, the Commissioner will publish instructions concerning the receipt of Christmas packages for inmates.

4.   Criteria for an inmate to receive Christmas packages are as follows:

a.   Inmates must have a four (4) month clear record prior to November 1st – no disciplinaries or behavior citations.

b.   Inmates who receives one (1) formal or informal disciplinary in the months of November and December will not be eligible to receive a package.

c.   Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence of a serious nature will be restricted from receiving packages one year from the incident.

5.   Incentive Packages will be accepted beginning May and September for one package per inmate from a person on the inmate's visitation/funds list. Packages postmarked after May 31 and September 30 will be returned to the sender C.O.D. Inmates must submit a request for an incentive package to the Warden/designee.

6.   Criteria for an inmate to receive an incentive package are as follows:

a.   Inmate must have six-month clear record-no disciplinaries or behavior citations.

b.   Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence

AR 448 – December 19, 2005

of a serious nature will be restricted from receiving packages one year from the incident.

    c.    Inmate should have two positive counselors/work reports within the six-month period preceding the package.

7.    An inmate may mail outgoing packages. However, these packages will be inspected for unauthorized items prior to dispatch. The sender-inmate must provide postage and wrapping materials.

8.    The Commissioner/designee may allow other packages as deemed appropriate.

## VI.   <u>DISPOSITION</u>

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.   <u>FORMS</u>

ADOC Form 448 – Notification of Rejected Mail

## VIII.   <u>SUPERCEDES</u>

This regulation formally included in Administrative Regulation 303, dated May 30, 2000.

## IX.   <u>PERFORMANCE</u>

ACA standards for Adult Correctional Institutions, fourth edition: 4-4487; 4-4490; 4-4491; 4-4492; 4-4494; 4-4496

Donal Campbell, Commissioner

AR 448 – December 19, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**Notification of Rejected Mail**

From: _____     Date: _____
        Institutional Mail Room

To: Inmate _____     AIS#: _____

   Cell/Dorm: _____     Bed #: _____

Correspondence From: _____

Date received at this Institution: _____

Is being returned to sender due to the following reason(s): _____
_____
_____
_____

The inmate has the option to return mail to sender at his/her own expense within thirty (30) days or the property will be destroyed.

The inmate has seventy-two (72) hours from the above date to appeal this return. State your reason(s) for appealing in writing below and return this form to the Warden/designee:

_____
_____
_____
_____
_____
_____
_____

_____ / _____
Inmate Signature                                      AIS#

_____
Date

**Appeal/Denied**                                    **Appeal/Upheld**

_____     _____
Printed Name                                          Printed Name

_____     _____
Authorized Signature                              Authorized Signature

_____     _____
Date returned to sender                         Date returned to inmate

**ADOC Form 448 – December 19, 2005**

AR 448 – December 19, 2005